OPINION OF THE COURT
Franklin R. Weissberg, J.
On August 30, 1996, at approximately 2:25 p.m., two men entered a jewelry store at 766 Third Avenue in Manhattan. They robbed the establishment at gunpoint, and during the course of the robbery one of them shot Hooman Paknoush, who later died as a result of his wounds.
The defendant and Alexis Rochez have been arrested and accused in the August 30 incident and in several other crimes. The People allege that the defendant was the man who shot Hooman Paknoush. The criminal court complaint charges this defendant with, among other crimes, murder in the first degree, a crime for which the punishment of death by lethal injection is authorized. His codefendant Rochez has not been charged with murder in the first degree. The defendant served written notice pursuant to CPL 190.50 (5) (a) of his intention to testify before the Grand Jury hearing evidence against him, and he waived his rights under CPL 180.80 until September 26, 1996.
Before deciding whether or not to exercise his right to testify before the Grand Jury, he filed what he calls a "motion to ensure fair and adequate procedures in the exercise of the defendant’s right to testify before the grand jury in a capital case.” He also seeks discovery of certain materials and infor *105 mation in the possession of the District Attorney’s office, and requests that certain legal instructions be given to the Grand Jury.
Among the items sought by way of discovery are the defendant’s statements made to law enforcement authorities, and certain additional information which he designates as "exculpatory”.* However, much of what he seeks is simply discovery. That process in a criminal proceeding is regulated by statute, embodied in CPL article 240. (People v Colavito, 87 NY2d 423, 427 [1996].) Under CPL 240.20 (1) discovery may be demanded "by a defendant against whom an indictment, superior court information, prosecutor’s information, information, or simplified information charging a misdemeanor is pending”. The defendant is in none of those positions and thus has no statutory right to his statements and the other discovery he seeks. (Matter of Hynes v Cirigliano, 180 AD2d 659 [2d Dept 1992].)
The defendant argues that he should be granted that discovery "because of the heightened due process requirements for capital cases mandated by the Federal and New York State Constitution”. He has cited no cases which directly support his claim, and there is no New York authority for it. Woodson v North Carolina (428 US 280 [1976]), upon which he principally relies, refers to procedures to be observed after a defendant has been convicted of a crime for which the death penalty can be imposed. (See, California v Ramos, 463 US 992, 998-999 [1983].) In drafting legislation which authorizes imposition of the death penalty or life without parole in certain cases, the Legislature made no provision for additional discovery procedures, and there is no other authorization for the discovery which the defendant seeks. (People v Rodriguez, 168 Misc 2d 219 [Sup Ct, NY County 1996]; People v Hale, 167 Misc 2d 872, 875 [Sup Ct, Kings County 1996].) His discovery requests are denied as premature.
The defendant’s requests for specific instructions to the Grand Jury generally involve questions of punishment, mitigation and mercy. Those requests misapprehend the function of the Grand Jury, which "is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution”. (People v Calbud, Inc., 49 NY2d 389, 394 [1980].) The ultimate determina *106 tion of guilt or innocence lies with the petit jury. "Given the grand jury’s limited function, the People are not required to present defenses in mitigation (People v Valles, 62 NY2d 36, 38-39) nor are they obligated 'to search for evidence favorable to the defense or to present all evidence in their possession that is favorable to the accused even though such information undeniably would allow the grand jury to make a more informed determination.’ (People v Lancaster, 69 NY2d 20, 25-26). The issue of punishment is therefore beyond the scope of the grand jury’s concern.” (People v Abdullah, Sup Ct, Monroe County, May 14, 1996, Wisner, J., indictment No. 53/96.)
The defendant’s contention that the Grand Jury must be instructed that this is a potential capital case is incorrect, and his demand that the jurors be informed of the "specific methods for an execution” is inappropriate. In addition, the views of the individual grand jurors regarding capital punishment are not relevant to the Grand Jury proceeding, and the defendant’s request for an individualized voir dire of the grand jurors on that subject is denied.
The defendant’s demands that the Grand Jury be instructed regarding mitigating factors relevant to first degree murder charges, including "a full recital of all statutory mitigating circumstances as defined in [CPL] 400.27 (8)” are also denied. Under the statutory framework applicable to murder in the first degree, mitigation applies to the penalty phase, and is irrelevant to a determination whether the People have presented sufficient evidence to establish a prima facie case that the defendant has committed the crime. (See, People v Franco, 86 NY2d 493 [1995]; People v Heard, Sup Ct, NY County, May 6, 1996, Rothwax, J.)
The People have indicated that they will consider the defendant’s remaining requests. While courts generally do not render advisory opinions on the appropriateness of Grand Jury instructions, two of those requests merit comment at this time. The defendant is a Caribbean-American of African descent. It is appropriate for the People to seek assurances from the jurors that matters of race or region will not affect the impartiality of their deliberations. Also, if the defendant offers evidence of an extreme emotional disturbance for which there is a reasonable explanation or cause, the Grand Jury should be instructed on the impact of such evidence. (People v Prater, Sup Ct, Kings County, Aug. 1, 1996, Feldman, J.)

 Insofar as the People have in their possession material or information exculpatory in nature, they are reminded of their continuing obligation under Brady v Maryland (373 US 83 [1963]) to turn it over to the defendant.